IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-280-FL

| | |
|---|---|
| REGALE, INC., ) | |
| ) | |
| Plaintiff / Respondent, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| THEE DOLLHOUSE PRODUCTIONS ) | |
| N.C., INC. and MICHAEL PETER, ) | |
| ) | |
| Defendants / Claimants. ) | |

This matter comes before the court on petition by plaintiff and arbitration respondent Regale, Inc. ("Regale") to vacate and/or modify the final arbitration award entered in this matter (DE #1), and on motion by defendant and arbitration claimant Thee Dollhouse Productions N.C., Inc. ("Dollhouse N.C.") to confirm said arbitration award (DE # 17). Defendant Michael Peter ("Peter"), an arbitration claimant, has not joined the motion to confirm the arbitration award. The issues raised are ripe for ruling. For the reasons that follow, Regale's motion is DENIED, Dollhouse N.C.'s motion is GRANTED, and the arbitration award is confirmed.

BACKGROUND

This case, in which Regale seeks to vacate and/or modify an arbitration award, and in which Dollhouse N.C. seeks to confirm such award, arises from a contract executed on June 15, 1992, between Dollhouse N.C., a Florida corporation, and Regale, a North Carolina corporation, whereby Dollhouse N.C. would provide managerial and consulting services to Regale in connection with Regale's operation of an adult nightclub in Raleigh, North Carolina ("the 1992 Agreement"). Peter,

a Florida resident who is sole shareholder of Dollhouse N.C., also was a signatory to the 1992 Agreement as mark owner of the trademark "Thee Dollhouse."

The 1992 Agreement required Dollhouse N.C. to provide Regale with, among other things, the resources and personnel to attract and hire staff, training and personnel manuals, services of legal counsel with respect to any First Amendment issues, contract forms, and marketing formats. Regale was to pay Dollhouse N.C. a weekly fee of three percent (3%) of gross receipts for these services, and an additional three percent (3%) of gross receipts for use of the "Thee Dollhouse" name, logo, and trademark. This six percent (6%) payment was collectively referred to as the "base fee." In addition to the base fee, the contract provided that beginning with fiscal year 1993, Regale would pay Dollhouse N.C. a sum equal to twenty percent (20%) of its operating profits, which would increase to twenty-four-and-one-half percent (24.5%) in fiscal year 1995. These payments were referred to as "incentive payments." The 1992 Agreement contains an arbitration provision, which provides that "[a]ny dispute or controversy between the parties arising from or relating to this Agreement, the Production, the use of the Premises or the relationship between the parties shall be resolved by final and binding arbitration before the American Arbitration Association to be held in the State of North Carolina." 1992 Agreement, Article XIX.A.

Dollhouse N.C. performed as required under the 1992 Agreement for at least twelve months following its execution. Regale contends, however, that Dollhouse N.C. stopped performing its duties under the contract in 1994, and that the parties terminated the 1992 Agreement during a meeting in Raleigh in 1996. At that time, Regale contends, Regale and Peter entered into a new oral licensing agreement by which Regale would pay only for use of the name "Thee Dollhouse" for so long as Regale used it. According to Regale, it made its final payment to Dollhouse N.C. under the

1992 Agreement on March 4, 1996, and beginning June 21, 1996, Regale made all payments directly to Peter pursuant to the terms of the new oral licensing agreement. Peter and Dollhouse N.C. dispute this version of events and contend that the 1992 Agreement was never terminated.

On April 16, 2007, Regale conveyed substantially all of its Raleigh assets to Raleigh Restaurant Concepts, Inc. ("RRC"), the North Carolina subsidiary of VCG Holding Corporation ("VCG"), a national consolidator and operator of adult nightclubs. Pursuant to the purchase agreement, RRC acquired substantially all of Regale's assets necessary to operate the adult nightclub in Raleigh, including all fixtures and personal property located on the business premises; all food and beverage supplies; certain contracts and contract rights; all improvements on the premises; all patents, software and software license agreements; computers and other equipment; all licenses; and any other asset not specifically excluded. Among assets specifically excluded was the 1992 Agreement.

Also pursuant to the purchase agreement, VCG, RRC, and Regale executed an indemnification agreement, whereby VCG and RRC agreed to hold harmless, indemnify, and defend Regale, its affiliates, shareholders, and officers against any losses suffered, incurred, or paid in connection with the 1992 Agreement, an unrelated lawsuit pending at that time, and certain other liabilities assumed by VCG and RRC. After closing on the purchase agreement, Regale sent Dollhouse N.C. and Peter a letter purporting to terminate any agreements between them.

This sale, which Dollhouse N.C. and Peter contend was a breach of the 1992 Agreement, spurred two pieces of related litigation that were previously before this court. In the first case, referred to for ease of reference as the "tort case," Dollhouse N.C. and Peter filed suit against VCG, David Fairchild ("Fairchild"), and Hospitality Licensing Corporation d/b/a The Men's Club ("Men's

3

Club") on July 18, 2007, in Texas state court. The complaint alleged that VCG, Fairchild, and Men's Club tortiously interfered with the 1992 Agreement between Dollhouse N.C. and Regale, that VCG misappropriated trade secrets and confidential proprietary information, and that VCG, Fairchild, and Men's Club engaged in a civil conspiracy. The tort case was removed to the United States District Court for the Northern District of Texas, where the claims against Fairchild and Men's Club were ultimately dismissed with prejudice by stipulation of the parties. After nearly a year of litigation, during which the parties conducted extensive discovery and filed dispositive motions, the tort case was transferred to this court. See Thee Dollhouse Prods. N.C., Inc. and Michael Joseph Peter v. David Fairchild, Hospitality Licensing Corp. d/b/a The Men's Club and VCG Holding Corp., No. 5:08-CV-282-FL, EDNC.

On May 2, 2008, nearly a year after initiating the tort case, Dollhouse N.C. and Peter filed a demand for arbitration against Regale and Barry Sandman[1] ("Sandman") with the American Arbitration Association, seeking (1) specific performance of the 1992 Agreement or damages from Regale for its breach; (2) damages from Regale for misappropriation of trade secrets and confidential proprietary information; and (3) damages directly from Sandman for his role in facilitating the alleged breach of the 1992 Agreement. Regale and Sandman sought to stay this arbitration through a state court action that was ultimately removed to this court (the "arbitration case"). See Michael Joseph Peter and Thee Dollhouse Prods. N.C., Inc. v. Regale, Inc. and Barry Sandman, No. 5:08-CV-255-FL, EDNC.

By order in the arbitration case entered March 25, 2009, this court found that Dollhouse N.C. and Peter had not waived their rights to arbitration against Regale by virtue of their litigation of the

---

[1] Sandman was president and ninety-five percent (95%) shareholder of Regale.

4

tort case. Accordingly, the court granted Peter and Dollhouse N.C.'s motion to compel arbitration against Regale, but denied the motion to compel arbitration against Sandman. In order entered March 30, 2009 in the tort case, this court granted summary judgment in favor of VCG on all of Peter and Dollhouse N.C.'s remaining claims. The court specifically noted, however, that its decision in the tort case did not reach the contract-related issues referable to arbitration, including whether the 1992 Agreement was valid and enforceable at the time of the 2007 sale, or whether Regale breached the 1992 Agreement by selling its assets to VCG. Both the tort case and arbitration case are closed, and this court's judgments have not been appealed.

The compelled arbitration was held in Chapel Hill, North Carolina in April 2010 before a three-arbitrator panel. On June 28, 2010, the arbitration panel issued its award. The panel found (1) that Peter should have and recover nothing from Regale; (2) that Dollhouse N.C. should have and recover from Regale the sum of $2,102,475.73 plus interest thereon beginning fifteen days from entry of the award; (3) that the administrative filing fees and case service fees, totaling $14,000.00, should be borne equally by the parties; (4) that the fees and expenses of the arbitrators, totaling $50,779.57, should be borne entirely by Regale and that Regale must therefore reimburse claimants the sum of $32,389.79; and (5) that each party should bear its own counsel fees and expenses of counsel. Regale filed a motion for modification or clarification of the award, which the arbitration panel denied.

In its ruling on Regale's motion for modification, the panel noted that neither side had requested a reasoned award prior to the appointment of the arbitrators, and that the panel was therefore not obligated to provide one. Nonetheless, the panel provided the parties with an explanation of how the amount of the damage award was determined. The panel found that the 1992

5

Case 5:10-cv-00280-FL   Document 146   Filed 01/20/11   Page 5 of 16

Agreement was modified by the parties in June or July 1996 to provide that Regale would pay Dollhouse N.C. $2,750.00 per week for weekly sales up to $75,000.00, $3,750.00 per week for weekly sales between $75,000.00 and $100,000.00, and $4,750.00 per week for weekly sales exceeding $100,000.00, and that such payments were made from the time of the modification until April 2007. The panel further found that the agreement as modified was breached by Regale on April 16, 2007. Sales at the Raleigh nightclub exceeded $100,000.00 per week in 2003, 2004, 2005, and 2006, and the panel found a reasonable expectation that sales would exceed $100,000.00 per week until January 31, 2017. Accordingly, the panel awarded Dollhouse N.C. damages in the amount of $4,750.00 per week from April 16, 2007, through June 30, 2010, plus interest at the North Carolina statutory rate of 8% per annum on each weekly payment from its due date through June 30, 2010, which amount totaled $910,221.88. The panel further awarded Dollhouse N.C. damages in the amount of $4,750.00 per week from July 1, 2010, through January 31, 2017, using a discount rate of 10% per annum, for a total present value of $1,192,253.85. These two amounts total $2,102,475.73.

On July 14, 2010, Regale initiated action in this court to vacate and/or modify the arbitration award. Dollhouse N.C. then moved to confirm the award.

## DISCUSSION

A federal court may vacate an arbitration award only upon a showing of one of the grounds specified in the Federal Arbitration Act ("FAA"), see 9 U.S.C. § 10(a), or upon a showing of one of certain limited common law grounds.[2] MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849,

---

[2] Following the Supreme Court's decision in Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576 (2008), there has been uncertainty surrounding the validity of non-statutory grounds for vacating an arbitration award. In Hall
(continued...)

857 (4th Cir. 2010). Under the FAA, a court may vacate an arbitration award for the following reasons:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The permissible common law grounds for vacating an award "include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006).

The FAA permits a court to modify or correct an arbitration award, "so as to effect the intent thereof and promote justice between the parties," for the following reasons:

---

²(...continued)
Street, the Supreme Court held that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification." Id. at 584. The court did not determine, however, whether common law grounds for vacatur, such as "manifest disregard of the law" or "essence of the agreement," remain permissible independent grounds for review of an arbitration award or as a judicial gloss on the FAA's enumerated grounds for vacatur. Id. at 585; see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S.Ct. 1758, 1768 n.3 (2010) ("We do not decide whether 'manifest disregard' survives our decision in Hall Street."). The Fourth Circuit has not addressed the issue. See MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849, 857 n.5 (4th Cir. 2010) ("Because we find that MCI and National Union's common-law arguments do not entitle them to relief, we need not decide whether courts may still vacate an arbitration award if the award fails to draw its essence from the controlling agreement, or if it flows from a manifest disregard of the applicable law."); Raymond James Fin. Servs., Inc. v. Bishop, 596 F.3d 183, 193 n.13 (4th Cir. 2010) (noting the "considerable uncertainty among the lower federal courts as to the continuing viability of extra-statutory grounds for vacating arbitration awards," and finding it "unnecessary to consider the effect of Hall Street."). In light of this uncertainty, the court conducts its analysis assuming, without deciding, that it could vacate an award due to an arbitrator's manifest disregard of the law, or if the award does not draw its essence from the controlling contract.

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

A court's authority to review an arbitration award is "substantially circumscribed." Patten, 441 F.3d at 234. Indeed, "the scope of judicial review for an arbitrator's decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all – the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." Three S Delaware, Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007) (citation and internal quotations omitted). In reviewing an award, a district court "is limited to determine whether the arbitrators did the job they were told to do – not whether they did it well, or correctly, or reasonably, but simply whether they did it." Id. (citation and internal quotations omitted). With these principles in mind, the court turns to Regale's various arguments in support of the award's vacatur or modification.

A.    Regale's Motion to Vacate and/or Modify

Regale presents a number of theories in support of its argument that the arbitration award should be vacated due to its manifest disregard of the law and failure to draw its essence from the contract.[3] Specifically, Regale believes the arbitration panel disregarded the terms of the 1992

---

[3] Although Regale attempts to characterize these arguments as made pursuant to § 10(a)(4) of the FAA, the Fourth Circuit has recognized manifest disregard of the law and failure to draw essence from the contract as non-
(continued...)

Agreement, which according to Regale, contained no restraint on a sale of assets. Regale also argues that the panel ignored a binding stipulation between the parties and further ignored the preclusive effects of this court's prior rulings. In further support of its motion, Regale argues that the panel miscalculated the damages that could be awarded under the 1992 Agreement, wrongly awarded damages based on lost revenues instead of lost profits, and disregarded the agreement's installment nature by awarding a lump sum. Each of these arguments is unavailing.

A party seeking to vacate an arbitration award based upon a manifest disregard of the law, or failure of an award to draw its essence from a contract, "shoulders a heavy burden." Remmey v. PaineWebber, Inc., 32 F.3d 143, 149 (4th Cir. 1994). Under Fourth Circuit precedent, a manifest disregard of the law is established "only where the 'arbitrator[ ] understand[s] and correctly state[s] the law, but proceed[s] to disregard the same.' " Patten, 441 F.3d at 235 (quoting Upshur Coals Corp. v. United Mine Workers, Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991)). Moreover, an arbitration award does not fail to draw its essence from the contract "merely because a court concludes that an arbitrator has 'misread the contract.' " Id. Indeed, "neither misapplication of principles of contractual interpretation nor erroneous interpretation of the agreement in question constitutes grounds for vacating an award." Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 194 (4th Cir.1998). An award fails to draw its essence from the contract only when the result is not "rationally inferable from the contract," id. at 193 n.5, as when the arbitrator "has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong," Three S Delaware, 492 F.3d at 528.

---

[3](...continued)
statutory, common law grounds for vacating an award. Patten, 441 F.3d at 234.

After considering the arbitration record and each of Regale's arguments, the court can not find that the arbitration panel manifestly disregarded the law, or that its award failed to draw its essence from the 1992 Agreement. First, the court rejects Regale's argument that the panel disregarded the contract's unambiguous terms by finding it contained a restraint on the sale of assets by Regale. The panel found that Regale breached the 1992 Agreement, as modified, on April 16, 2007. According to Regale, this finding necessarily implies that the 1992 Agreement contained a prohibition on the sale of assets. The panel did not explain why it determined that the agreement had been breached, however, nor was it required to. "It is well settled that arbitrators are not required to disclose the basis upon which their awards are made and courts will not look behind a lump-sum award in an attempt to analyze their reasoning process." MCI Constructors, 610 F.3d at 862.

The court can imagine a number of reasons, none of which disregard any unambiguous provision of the contract, for the panel's finding that Regale breached the 1992 Agreement on April 16, 2007.[4] The court need not engage in such speculation, however, because it is clear from the record that the arbitration panel construed and applied the agreement in reaching its decision. Under the law, this is all it was required to do. See id. at 861 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.")(citation and internal quotations omitted). Accordingly, because the panel's determination that Regale breached the 1992 Agreement could have resulted from several plausible interpretations of the contract, the

---

[4] For example, the panel could have determined that Regale breached the agreement by purposely making its own continued performance impossible, by unilaterally terminating the agreement, by ignoring the agreement's restrictive covenants, or by selling its assets to a competitor who intended to operate the club under a different name.

10

award must not be disturbed on this ground.[5]

The court also rejects Regale's additional arguments regarding the award's alleged failure to draw its essence from the controlling agreement. These arguments are essentially a disagreement with the arbitration panel's legal and contractual interpretations, and they fall far short of the showing necessary to vacate an arbitration award. Regale's argument that its revenues were $0 following the asset sale, and that it accordingly can owe only a $2,750.00 weekly fee (the lowest amount due under the three-tiered scale), assumes that no breach occurred.[6] As discussed above, the arbitration panel found that Regale breached the 1992 Agreement, as modified, on April 16, 2007. Regale's argument that the panel's damage award is a "blatant miscalculation" disregards this legitimate finding.

Furthermore, the court finds no reason to vacate or modify the award based on Regale's argument that the panel wrongly awarded damages based on lost revenues rather than lost profits. Based on the sliding scale established in the modified agreement, and evidence that sales at the Raleigh nightclub exceeded $100,000.00 per week in 2003, 2004, 2005, and 2006, the panel applied the $4,750.00 weekly fee to project fees due to Dollhouse N.C. during the damage period.[7] It

---

[5] The court also has considered Regale's arguments that the panel wrongly ignored a binding stipulation between the parties and this court's prior description of the April 16, 2007 sale as an "asset sale." These arguments are without merit.

[6] Regale originally argued that it would owe nothing under the contract following the sale, but corrected this argument in its response to Dollhouse N.C.'s motion to confirm.

[7] Regale makes much of the fact that beginning in 1996, Regale wrote checks to Peter personally, rather than to Dollhouse N.C. The arbitration panel found, however, that Regale continued to pay Dollhouse N.C. until April 2007. Given that Peter is Dollhouse N.C.'s sole officer and shareholder, that the corporation was established solely for the purpose of entering the contract with Regale, and that all of Regale's checks to Dollhouse N.C. and to Peter were designated as "management fees," the court finds no manifest disregard of the law or of the contract in the arbitration panel's apparent finding that any distinction between Peter and Dollhouse N.C. on the face of the checks was insignificant.

11

applied a discount rate to account for any uncertainties regarding the $100,000.00 figure. Regale points to no evidence that Dollhouse N.C.'s lost revenues differed from its lost profits, and the economic damages model utilized by the panel was based, in part, on the report prepared by Regale's own expert. It appears the panel based its damage calculation on scrutiny of the parties' financial records and on careful analysis of expert reports and testimony. These economic damages were established to a reasonable certainty, and were not based on hypothetical or speculative forecasts. See Ross v. Washington Mut. Bank, 566 F.Supp.2d 468, 482 (E.D.N.C. 2008) (noting that under North Carolina law, "damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analysis, and business records of similar enterprises" (citation and internal quotations omitted)). The court can not find that the arbitrators manifestly disregarded the law or ignored any unambiguous contract provisions in calculating the damage award.[8]

Finally, the court considers Regale's argument that the arbitration award is barred by the preclusion doctrines of collateral estoppel and res judicata. The doctrine of collateral estoppel, or issue preclusion, "operates to bar subsequent litigation of [common] legal and factual issues . . . that were actually and necessarily determined by a court of competent jurisdiction in the first litigation." In re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996) (citation and internal quotations omitted). It operates where: "(1) the 'identical issue' (2) was actually litigated (3) and was 'critical and necessary' to a (4) 'final and valid' judgment (5) resulting from a prior proceeding in which the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue." McHan

---

[8]The court also has considered Regale's argument that the 1992 Agreement was an installment contract, and that the panel disregarded the applicable statute of limitations. These arguments lack merit.

Case 5:10-cv-00280-FL   Document 146   Filed 01/20/11   Page 12 of 16

v. Comm'r, 558 F.3d 326, 331 (4th Cir. 2009). Res judicata, or claim preclusion, "bars a party from suing on a claim that has already been 'litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action.'" Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 210 (4th Cir. 2009) (quoting 18 James Wm. Moore et al., Moore's Federal Practice § 131.10(1)(a) (3d ed.2008)). Res judicata operates where there is: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." Pueschel v. United States, 369 F.3d 345, 354-55 (4th Cir. 2004) (citing Nash County Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 486 (4th Cir.1981)).

This court's prior decisions in the tort case and the arbitration case make clear that neither collateral estoppel nor res judicata bar the arbitration award, and the arbitration panel accordingly committed no error in issuing an award on the merits. The tort case, as previously noted, was brought by Dollhouse N.C. and Peter against VCG, Fairchild, and Men's Club for tortious interference with a contract, misappropriation of trade secrets and confidential proprietary information, and civil conspiracy. For purposes of its final order in the tort case, the court "assume[d] without deciding" that the 1992 Agreement was valid and enforceable at the time of the alleged interference, that Regale breached the 1992 Agreement by selling its assets to VCG's subsidiary, and that VCG intentionally induced Regale to sell its assets in breach of the contract. Thee Dollhouse Prods. N.C., Inc. and Michael Joseph Peter v. David Fairchild, Hospitality Licensing Corp. d/b/a The Men's Club and VCG Holding Corp., No. 5:08-CV-282-FL, EDNC, Docket Entry No. 129 (March 30, 2009). Even under these assumptions, the court ruled in VCG's favor on the

13

tortious interference claim because its actions were justified under the law. Id. Accordingly, the court's ruling in favor of VCG was made "without reaching the merits of the contract dispute subject to arbitration between [claimants] and Regale." Id. Because the court expressly indicated that it made no findings with regard to the contract interpretation issues subject to arbitration, the doctrine of issue preclusion is wholly inapplicable here.

Res judicata is similarly inapplicable. In the arbitration case, Regale presented many of the same arguments it now makes regarding Dollhouse N.C. and Peter's alleged "procedural gamemanship" in first initiating the tort case in Texas before seeking to arbitrate its contract claims with Regale. Despite the unusual posture of the two cases, this court held that Peter and Dollhouse N.C. did not waive the right to arbitrate their contract-related claims against Regale by first pursuing the tort litigation against different parties, with whom they had no agreement to arbitrate. In granting Peter and Dollhouse N.C.'s motion to compel the arbitration that is now subject of the instant dispute, this court noted that "the tort case involves claims against different parties that are legally, and to a certain extent, factually distinct from those at issue here." Michael Joseph Peter and Thee Dollhouse Prods. N.C., Inc. v. Regale, Inc. and Barry Sandman, No. 5:08-CV-255-FL, EDNC, Docket Entry No. 35 (March 25, 2009). The court again finds that the claims brought by Dollhouse N.C. and Peter against different parties in the tort case are separate and distinct from the breach of contract claims asserted against Regale in arbitration; accordingly, the latter are not barred by res judicata.[9] Moreover, Dollhouse N.C. and Peter could not have asserted the breach of contract claims

---

[9] Indeed, it could be considered inequitable for the court to conclude otherwise, because in the tort case, this court denied Peter and Dollhouse N.C.'s motion to stay the tort litigation pending the outcome of the arbitration. The court determined that a stay of the tort litigation was unnecessary, given that the claims asserted in that case could be decided without reaching the issues referable to arbitration. See Thee Dollhouse Prods. N.C., Inc. and Michael Joseph Peter v. David Fairchild, Hospitality Licensing Corp. d/b/a The Men's Club and VCG Holding Corp., No.
(continued...)

against Regale in the tort litigation, because of the arbitration clause in the 1992 Agreement.[10] The court finds no identity of claims or of parties, and therefore, the arbitration panel did not manifestly disregard the law in declining to apply res judicata.

In sum, the court sees no evidence that the arbitrators manifestly disregarded the law in reaching their decision, or that the award fails to draw its essence from the 1992 Agreement. Regale's motion to vacate and/or modify the award is therefore DENIED.

B.  Dollhouse N.C.'s Motion to Confirm

Section 9 of the FAA provides that at any time within one year after an arbitration award is made, a party to the arbitration may apply to a federal district court for an order confirming the award. 9 U.S.C. § 9. As already discussed, a court's review of an arbitration award is substantially circumscribed, see, e.g., Union Pac. R.R. v. Sheehan, 439 U.S. 89, 91 (1978) (per curiam) (stating that the scope of review of arbitration award is "among the narrowest known to the law" (internal quotation marks omitted)); Upshur Coals Corp. v. United Mine Workers, Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991) (noting that arbitration awards are "accorded great deference"), and a court must confirm the arbitration award unless the award is vacated, modified, or corrected pursuant to sections 10 or 11 of the FAA. 9 U.S.C. § 9. The court has denied Regale's motion to vacate and/or modify on the various grounds asserted; therefore, the court GRANTS Dollhouse N.C.'s motion to confirm the arbitration award.

---

[9](...continued)
5:08-CV-282-FL, EDNC, Docket Entry No. 129 (March 30, 2009)

[10]It is also questionable whether the Texas court in which the tort litigation originally was brought could have exercised personal jurisdiction over Regale.

## CONCLUSION

It is ORDERED for the foregoing reasons, that Dollhouse N.C.'s motion to confirm the arbitration award (DE #17) is GRANTED and that Regale's motion to vacate and/or modify (DE #1) is DENIED. The clerk is hereby instructed to enter final judgment in favor of Dollhouse N.C. and against Regale in the amount of $2,102,475.73 (which shall bear interest at the North Carolina statutory rate of eight percent (8%) per annum beginning July 13, 2010), plus $32,389.79, representing the fees and expenses taxed to Regale.

SO ORDERED, this the 20th day of January, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Court Judge